CHARLES CLARKE, SR., ET AL. v. JULIA ADAM.

Decided June 17, 1902.

1.—Life Insurance—Assignment of Policy—Variance.

Where a wife sued to recover such sum as defendants had collected on an insurance policy on the life of her husband for her benefit and in excess of their debts secured by an assignment of it, and it was not controverted that the policy was assigned to secure debts of the husband, an averment that she had executed the assignment to a firm was sufficient to admit proof that it was executed to a member of the firm for its benefit.

2.—Same—Parol Evidence.

Where an assignment of an insurance policy was absolute on its face, and did not recite the true purpose for which it was given, evidence of the surviving beneficiary that it was so made because a prior assignment was refused by the insurance company, was admissible, and was not contradictory of the consideration in the second assignment.

3.—Same—Evidence—Transaction With Decedent.

Where an insurance policy was assigned to a firm to secure a debt of the insured, and after the death of a member of the firm the beneficiary sued to collect the excess from the surviving partner and the surviving wife of the deceased member, parol evidence was admissible to show the character of the assignment, and was not in violation of the rule forbidding a party to the suit to testify as to transactions with the decedent; and since the partners were jointly and severally liable, such evidence was admissible against the surviving member.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert M. Franklin.

*James B.* and *Charles J. Stubbs,* for appellants.

*Lovejoy & Malevinsky,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Julia Adam, the appellee, against Mary Ervin and Charles Clarke, Sr., to recover certain money alleged to have been collected by them on a policy of insurance upon the life of the deceased husband of appellee, the latter being the beneficiary therein, and which had been pledged to R. T. Ervin and Charles Clarke, Sr., to secure certain indebtedness due by

the husband of appellee to said last named parties. She also sued to recover the value of two shares of stock of the. People's Loan and Homestead Company alleged to have also been pledged in the same transaction.

Plaintiff conceded that the policy had been pledged with her consent to secure the payment of a note due by her deceased husband, Julius Adam, to the firm of R. T. Ervin & Co., a firm composed of R. T. Ervin and Charles Clarke, Sr. That the amount of this note was $560, with 10 per cent interest from January 9, 1899, to July 14, 1899. That the pledgees had paid $110 as a premium on the policy, which with interest from December 1, 1898, to July 14, 1899, should be offset against her claim, and that defendants were entitled in offset to $500 cash paid to her by Clarke after the death of her husband and $29.50 as the expense of collecting the policy. The sum of these conceded credits is $1232.38.

The defendants answered by general denial, and pleaded a further offset of $700 interest and attorney's fees evidenced by a promissory note of deceased payable to R. T. Ervin & Co., and a claim of $120 for rent. Also a note for $300. All these were claimed by defendants to have been secured by the assignment of the policy.

A trial by jury resulted in a verdict and judgment against both defendants for $3767.62, and an additional sum of $522.44 as lawful interest thereon from July 14, 1899, to November .16, 1901. Plaintiff was also awarded $180 as the market value of the shares of stock. From this judgment defendants have appealed.

The facts are as follows: Mrs. Julia Adam is the surviving wife of Julius Adam, deceased. The latter died on the 10th day of June, 1899. Mrs. Ervin is the surviving widow of R. T. Ervin, who died the 28th day of March, 1899. R. T. Ervin and Charles Clarke, Sr., were partners engaged in running a private bank at Wharton, Texas. R. T. Ervin managed the business and acted as cashier.

On the —— day of ———, 18—, Julius· Adam became indebted to R. T. Ervin & Co. in the sum of $300, for which he gave his promissory note. On the 11th day of March, 1898, he executed and delivered to said firm another note for $700. On the 9th day of November, 1898, he borrowed from said firm $560 for which he executed his note. He was due R. T. Ervin at the date of his death $120 as rent of certain premises leased to him by Ervin.

Julius Adam in his lifetime had taken out a policy of insurance upon his life. The amount of it was $5000, and his wife was named as beneficiary therein. This policy was in force when the $560 note was executed, and his wife as beneficiary joined in an assignment of the policy to R. T. Ervin & Co. to secure the payment of the note. The policy at that time was valued at about $260, and Mrs. Adam put up her jewels with said firm to further secure the note. She also pledged the two shares of stock described in the pleadings to secure the premium on the policy which was then about due, and which the assignee paid,

the amount of the premium being $110. The assignment was in writing, and is as follows:

"Wharton, Texas, 11-10-1898.—For value received I hereby transfer to R. T. Ervin & Co. Equitable Life Assurance Society policy No. 598,652 on the life of Julius Adam $5000.

"This transfer is made to secure the payment of a note for $560, dated Nov. 9, 1898, due in 60 days.

(Signed)   "Mrs. Julia Adam."

On December 3, 1898, Julius Adam executed to R. T. Ervin a written assignment absolute on its face for a recited consideration of $1000, and which contained nothing to indicate what it was given to secure. This is the assignment under which appellants claim, and though they adduced evidence tending to show that the $700 note, the $560 note, the sum for premiums, the costs of collecting the policy, and the rent claim for $120 had not been paid except by the collection of the policy, no proof was offered by them tending to establish the real purpose of the assignment or what debts or claims it was intended to secure. They relied on the terms of the assignment, but also claimed that it covered the entire indebtedness to the firm and to R. T. Ervin, the sum of which exceeded the consideration recited in the written assignment.

Upon the death of R. T. Ervin his wife qualified as survivor, and as such and in her individual capacity she collected from the insurance company a sum equal to the face of the policy, and deposited the amount in the bank of Adoue & Lobit, at Galveston. The indebtedness of Adam was owned by the firm at the date of Ervin's death, but Mrs. Ervin, with the active aid of Clarke, who was her father, proceeded to wind up the affairs both of the partnership and of her husband's estate. When the proofs of death were made the insurance company was advised that Mrs. Adam was claiming as beneficiary in the policy, but was not contesting the assignment and was willing it should be collected subject to her rights.

After the death of her husband and before the collection of the policy Mrs. Adam applied to Clarke and had him advance her $500, to be withheld when the collection was made. She also secured through Clarke the return of her pledged jewels.

It was shown by plaintiff that the assignment was not absolute but was made to secure debts, and this may be said to have been conceded upon the trial.

Mrs. Adam testified that she made the assignment to secure the $560 note and nothing else. That the first assignment recited this fact but was unsatisfactory to the insurance company, which refused to recognize anything less than an assignment of the entire policy. That in response to this demand the second assignment was made as a substitute for the first and upon no new or additional consideration.

According to the testimony of Clarke, which upon this point seems

undisputed, he took small interest in the partnership, having furnished a part of the capital to aid the business. That he received none of the proceeds of the policy and none of it was used for his benefit.

The $300 note of Adam was paid prior to the collection of the policy. The evidence is conflicting as to the payment of the $700 note, and we do not think its payment was shown.

The evidence admitted establishes that the assignment of the policy was only for the purpose of securing the payment of the note for $560, and the verdict of the jury finds ample support in the evidence, both as to the amount to which plaintiff was entitled and the liability of both defendants.

The first and second assignments predicate error upon the admission of the testimony of Mrs. Adam to the effect that the second assignment of the policy superseded the first, and was made because the first assignment was not acceptable to the insurance company. The objections urged to this evidence are (1) that the evidence was variant from the pleadings which averred an assignment to R. T. Ervin & Co.; (2) it contradicted the statement of the consideration as recited in the second assignment; and (3) it violated the rule forbidding a party to a suit of this nature to testify to transactions with a decedent.

The averment was that plaintiff was the owner of the policy, having been named as beneficiary therein, and that she had executed and delivered an assignment thereof to R. T. Ervin & Co. to secure certain of her husband's debts to that firm. The fact that the policy was so assigned is shown by the undisputed proof. It is not even contended by appellants, nor was it ever at any time contended, that they owned the policy absolutely or had any interest therein beyond the indebtedness it was intended to secure.

Plaintiff did not and could not sue to enforce the assignment. That right rested alone in appellants. She sued to recover such sum as appellants had collected in excess of the secured debts. Thus it becomes apparent that it is immaterial whether the assignee named in the writing was R. T. Ervin or R. T. Ervin & Co. The substance of the allegation was proved when it was shown that the assignment was made to secure debts due the firm, and that for that purpose the assignment was executed and delivered to a member of the firm for the benefit of the firm. The objection of variance is without merit.

The objection that the admission of the evidence was in contravention of the rule that parol evidence will not be heard to vary the terms of a written instrument is also without merit. The written assignment did not recite the true purpose for which it was given, but appeared on its face to be an absolute transfer. It is familiar law that where such an instrument is in fact intended as a mortgage or pledge the truth of the transaction may be shown. Indeed, in this case it was necessary for the protection of appellants' rights, and in order that they might enforce any interest in the policy, that the true nature of the transfer should be made to appear. The assignment if absolute was void, for it is not

contended that the firm had such an insurable interest in the life of deceased as would have made it a lawful beneficiary therein. The enforcible interest of the firm was measured and limited by the amount of indebtedness the assignment was designed to secure.

The third objection, to the effect that the admission of the testimony violated the rule forbidding a party to a suit of this nature to testify to transactions had with the decedent, at first glance appears to be serious. But we think there is sound reason for the admission of the evidence, notwithstanding the rule. It is true the suit as against Mrs. Ervin seeks to hold her in her representative capacity as survivor of the community, and in such a case the rule invoked would exclude the evidence complained of. But the suit grows out of a transaction with a partnership. The partners were jointly and severally liable to plaintiff for the proceeds of the policy after the payment of the debts it was intended to secure. The defendant Clarke could not acquit himself of this responsibility by assigning his interest in the partnership to Mrs. Ervin or another. In a suit against him and in this suit as against him the testimony was admissible. However, if this were not true its admission was harmless. As has already been indicated, the only issue in the case was the amount of money the defendants should retain to satisfy debts secured by the policy. They set up these sums in offset to plaintiff's demand. Clarke and his codefendant set up these pleas jointly. The only interest they could have in the fund was measured by the debts secured by the policy. The evidence was undisputed that the assignment was intended to secure debts. This was not dependent on the testimony of plaintiff, but was clearly made to appear by the acts and declarations of defendants by which the fact was conceded. In our opinion, when this was made to appear it devolved on defendants to show the amount of the debts covered by the assignment.

In Dakin v. Insurance Company, 77 New York, 600, the policy was payable to a ccreditor as his interest might appear. The court held the burden to be upon the creditor to prove the existence and extent of his interest.

In Andrews v. Insurance Company, 92 Texas, 584, Justice Brown, speaking of a similar clause in the policy under discussion in that case, held the burden upon the creditor to establish the amount of his debt, and said among other things: "Had the clause, 'as his interests may appear, otherwise to the executors, administrators or assigns of the insured,' been omitted, then if Dyke (the creditor) had collected the money he could not retain more than the insured was indebted to him at the time of the latter's decease, but would hold the balance as trustee for the heirs of Andrews" (the insured), citing Levy v. Gilliard, 76 Texas, 400; Goldbaum v. Blum, 79 Texas, 638.

In the case before us the assignment did not express the purpose for which it was made nor indicate the debts it was intended to secure. It left in doubt the amount of the interest of the creditor. In legal effect it authorized them to withhold as their interests might appear. Defend-

ants averred that it covered the entire indebtedness of deceased to the firm. The assignment standing alone empowered them to do no more than to collect the policy from the insurance company. It had the additional force of protecting the company in its payment to defendants. In the absence of proof of the existence of debts secured by the assignment, plaintiff had the right to recover the entire sum. Defendants answered jointly, and after the general denial averred a joint ownership of the debts they sought to offset against plaintiff's demand. The general denial was overcome by the ample proof that the assignment was for the purpose of securing debts, and that the policy had been collected by defendants. Clarke joined in the prayer that the debts be paid out of the proceeds of the policy. The jury allowed such debts as were shown to have been so secured and held both defendants for the balance. In this we think they were amply justified by the proof. In this view of the case it becomes immaterial whether or not the court erred in hearing the testimony of Mrs. Adam.

The defendants failed to bring any of their debts within the purview of the assignment except those conceded by the plaintiff to have been covered by it.

None of the debts mentioned were the individual liabilities of the plaintiff. She had done no more than to pledge her policy to secure some of them.

The efforts of defendants to establish the offsets pleaded by them was in the nature of an effort to foreclose a lien, and it devolved upon them to establish the amount of their demand.

Independent of these considerations there is much in the evidence to support the conclusion that neither the $700 note nor the $120 claim for rent was secured by the policy. The $700 note was dated in March, 1898. It was secured by vendor's lien notes amounting to $600, pinned to it as collateral. This note was at one time assigned to Gifford & Co., and the vendor's lien notes were at that time so attached. It is not pretended that it was then regarded as secured by the assigned policy. There is certainly no presumption growing out of the assignment that it was intended to cover all the indebtedness of the husband. It is more probable the wife was induced to make it to secure the money procured by her husband about the date of the assignment. The books of the bank in the handwriting of Ervin were adduced in evidence and contained no mention of the policy in connection with the $700 note. The $120 rent claim was an individual claim of R. T. Ervin, and there is nothing in the evidence to indicate that anything but partnership claims were in contemplation.

We do not deem it necessary to notice in detail the remaining assignments. They present no error requiring a reversal. The judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.